**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                          :
ANITA BECKETT,                            :
ADMINISTRATRIX OF THE ESTATE OF           :
SAMUEL BECKETT, DECEASED,                 :
                    Plaintiff,            :        CIVIL ACTION
                                          :
     v.                                   :        NO. 07-1868
                                          :
MICHAEL O. LEAVITT,                       :
SECRETARY OF HEALTH AND HUMAN             :
SERVICES,                                 :
                                          :
                    Defendant             :
_____ :

ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff, Anita Beckett ("Plaintiff"), Administratrix of the estate of Samuel Beckett, deceased, brings this action under 42 U.S.C. § 1395, et seq, which establishes the Medicare program. Plaintiff seeks review of the final decision of the Secretary of Health and Human Services ("Secretary"), denying coverage of the air ambulance transport of Plaintiff's deceased husband under Medicare Part B. Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. §§ 405(g) and 1395ff(b)(a)(1). Presently before this Court is Defendant's Motion for Summary Judgment and Memorandum of Law in support, Plaintiff's Cross-Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment, Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary

Judgment and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment.  For the reasons that follow, it is recommended that the matter should be remanded for further proceedings.

I.   **PROCEDURAL HISTORY**

On March 10, 2005, Plaintiff's decedent, Samuel Beckett ("Mr. Beckett") was transported by air ambulance from Lovelace Medical Center ("Lovelace") in Albuquerque, New Mexico to Lankenau ("Lankenau") Hospital in Wynnewood, Pennsylvania.  Med Flight Air Ambulance ("Med Flight") provided the services to Mr. Beckett.  Med Flight filed a claim for Medicare payment for the transport in the amount of $31,000.  Medicare initially allowed payment for this transport in the amount of $7,504.21.  Med Flight appealed this determination, claiming that it should not have received any payment from Medicare because the transport of Mr. Beckett was a non-covered transport.

On November 15, 2005, a Fair Hearing Officer (FHO) hearing decision was issued, which found that this transport should not have been paid by Medicare because Mr. Beckett could have received appropriate treatment at a facility in Albuquerque and did not need to be transported to Lankenau.  Plaintiff appealed this FHO decision on December 20, 2005.  On August 22, 2006, a telephonic hearing was held in front of Administrative Law Judge B. T. Amos, at which time both Plaintiff and Larry Levy, M.D.,

CEO of Med Flight, testified before the Administrative Law Judge ("ALJ").

Having considered evidence of Plaintiff's claim, the ALJ issued an unfavorable decision on November 28, 2006, in which he found that the air ambulance transport of Mr. Beckett was not a covered service and that the beneficiary was liable for the charges.  (R. 15).  The ALJ found that "the beneficiary's documented medical conditions and the evidence presented show that Lankenau Hospital in Pennsylvania was not the closest, appropriate facility capable of treating Mr. Beckett's medical conditions."  (R. 16).  He found that Plaintiff had not met her burden of establishing sufficient information to determine that payment for the ambulance transport was due.  (Id.)  Accordingly, the ALJ concluded that Plaintiff's request for payment of the March 10, 2005, ambulance transport should be denied.  Plaintiff requested a review of the ALJ's decision by the Medicare Appeals Council ("MAC"), and the MAC denied the request for review on March 12, 2007, thereby rendering a final decision adverse to Plaintiff.  (R. 1-4).

Plaintiff then filed this civil action seeking judicial review of the Secretary's decision that the air ambulance transport of Mr. Beckett is not a covered service under Medicare. Defendant filed a Motion for Summary Judgment on August 17, 2007, and on September 24, 2007, Plaintiff filed a Cross-Motion for

3

Summary Judgment and Response to Defendant's Motion for Summary Judgment.  Defendant filed an opposition to Plaintiff's Cross-Motion for Summary Judgment on October 9, 2007, and on October 23, 2007, Plaintiff filed a Reply to Defendant's Response.  The matter was then referred to this Magistrate Judge for preparation of a report and recommendation.

## II.  **FACTS**

The evidence of record shows that Medicare beneficiary Samuel Beckett was on a commercial airline flight from Philadelphia, Pennsylvania, to Phoenix, Arizona on March 8, 2005, to visit his brother who was in hospice.  (R. 473).  After having stowed a heavy suitcase in the overhead compartment, he complained to his wife of severe chest pain.  (R. 9, 473).  He later complained of a headache.  (Id.)  Shortly after he complained of a headache, Mr. Beckett became unconscious.  (R. 474).  A doctor on the flight monitored Mr. Beckett's vital signs and administered oxygen until the plane made an emergency landing in Albuquerque, New Mexico.  (Id.)  Mr. Beckett did not regain consciousness at any time during the flight, nor at any time thereafter.  (Id.)  Upon landing in Albuquerque, Mr. Beckett was transported to Lovelace Medical Center.  (R. 9, 476).

At Lovelace, Mr. Beckett came under the care of Dr. Sally Harris, a neurologist, and Dr. Peter Economou, a pulmonary physician.  (R. 477).  The Lovelace doctors believed that Mr.

4

Beckett had suffered a stroke, but were unable to locate an embolism after several CAT scans.  (R. 65, 478).  Mr. Beckett had a history of cardio-pulmonary and neurological disorders for which he received regular treatment, including Sneddon's syndrome, which is a rare neurological disease.  (Pl. Cr. Mot. at 4).  Drs. Harris and Economou consulted with Dr. Bryan DeSouza, Mr. Beckett's treating neurologist who was located at Lankenau. (R. 35-36, 423-24).  According to Dr. DeSouza, Mr. Beckett's doctors at Lovelace "called [him] multiple times to see if [he] could help them diagnose the problem and find a treatment."  (R. 35).  Dr. DeSouza stated that he gave the Lovelace doctors "multiple instructions including checking [Mr. Beckett's] lungs and brain for a basilar artery thrombosis and pulmonary embolism, which could be caused by the Sneddon's syndrome."  (Id.)

According to Dr. DeSouza, despite running numerous tests and contacting multiple specialists, the doctors at Lovelace could not diagnose Mr. Beckett.  (Id.)  Dr. DeSouza further stated that the doctors at Lovelace "felt that they were not equipped or knowledgeable about [Sneddon's] syndrome in order to help," and that they "knew that this was a treatable and curable condition if managed properly."  (Id.)

Over the next several days, Mr. Beckett's condition continued to deteriorate.  A transfer was then arranged to Lankenau.  Therefore, on March 10, 2005, Med Flight flew Mr.

Beckett from Lovelace to Lankenau.  In order to transfer Mr. Beckett, Med Flight required Plaintiff to pay $19,000 up front for the transport.  (R. 508).  Unfortunately, Mr. Beckett's condition continued to deteriorate upon admission to Lankenau, and he ultimately passed away on March 25, 2005, having never regained consciousness.  (R. 474).

Med Flight later submitted a claim to Medicare for the cost of Mr. Beckett's transport.  (R. 447).  When it submitted this claim to Medicare, Med Flight used the "GZ" modifier to the billing code, which is an indication that Med Flight did not believe that Mr. Beckett's transport by air ambulance was reasonable and necessary under the Medicare guidelines.  (R. 8, 445).  Medicare, through Pinnacle Business Services, a Medicare carrier, allowed partial coverage of the transport in the amount of $7,504.21 on June 17, 2005.  Med Flight then appealed this determination "to ensure that [the claim] was not allowed in error."  (R. 445).  On November 15, 2005, a Pinnacle Business Services Fair Hearing Officer found that the transport was not reasonable and necessary because Mr. Beckett could have been transported to a closer facility.  (R. 440-444).  Therefore, the FHO found the transport was not covered by Medicare.  (R. 441).

Plaintiff requested a hearing before an Administrative Law Judge, and a telephonic hearing was held on August 22, 2006, before ALJ B. T. Amos.  On November 28, 2006, ALJ Amos ruled that

Plaintiff was not entitled to Medicare reimbursement for the
costs of the air ambulance transport because the air ambulance
services provided were not to the "nearest appropriate facility."
(R. 20-28).  Plaintiff was denied review by the Medicare Appeals
Council on March 12, 2007, thus making ALJ Amos' decision the
final decision of the Secretary.  (R. 3-4).

The ALJ set forth the relevant legal standard in this case,
which is that Medicare will only cover transport for a patient
from one hospital to another if the hospital to which the patient
is transferred is the nearest one with appropriate facilities.
(R. 13).  The ALJ evaluated the evidence of record and found that
Lankenau was not the closest, appropriate facility capable of
treating Mr. Beckett's medical condition.  (R. 16).  Therefore,
the ALJ found that the air ambulance transport of Mr. Beckett was
not a covered service under Medicare, and Plaintiff was liable
for the charges of the transport.  (R. 16).

## III. <u>LEGAL STANDARD</u>

The role of this Court on judicial review is to determine
whether there is substantial evidence in the administrative
record to support the Secretary's final decision.  Any findings
of fact made by the ALJ must be accepted as conclusive, provided
that they are supported by substantial evidence.  42 U.S.C. §
405(g).

"Substantial evidence" is deemed to be such relevant

7

evidence as a reasonable mind might accept as adequate to support a decision.  Richardson v. Perales, 402 U.S. 389, 407 (1971), (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  See also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  The ALJ must consider all relevant evidence in the record and provide some indication of the evidence he rejected and why he rejected it.  See Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  When determining whether the ALJ's decision is supported by substantial evidence, the Court may look to any evidence in the record, regardless of whether the ALJ cites to it in his decision.  Hook v. Bowen, 677 F. Supp. 305, 306 (M.D. Pa. 1988); Eposito v. Apfel, 66 Soc.Sec.Rep.Ser. 217, 2000 WL 218119, at *6 (E.D. Pa. Feb. 24, 2000).  Thus, the issue before this Court is whether the Secretary's final decision denying Plaintiff's request for payment of the air ambulance transport should be sustained as being supported by substantial evidence.

Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of entitlement to Medicare benefits.  Tucker v. Thomson, 2006 U.S. Dist. LEXIS 336, *6 (D.N.J. Jan. 9, 2006).  Ultimately, however, the beneficiary bears the burden of proving his or her entitlement to Medicare coverage.  Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1996).

8

The Medicare Part B program at issue in this case entitles a beneficiary to have payment made to him or her for medical and other health services.  Acting under the authority of 42 U.S.C. § 1395x(s)(7), the Secretary promulgated regulations defining the extent to which ambulance services are covered by Medicare Part B.  Medicare Part B pays for ambulance transport of a beneficiary if certain requirements are met.  In this matter, the applicable requirements are as follows:

> (e)  Origin and destination requirements. Medicare covers the following ambulance transportation:
>
> (1)  From any point of origin to the nearest hospital . . . that is capable of furnishing the required level and type of care for the beneficiary's illness or injury.  The hospital . . . must have available the type of physician or physician specialist needed to treat the beneficiary's condition.

42 C.F.R. § 410.40(e).

The Secretary has issued the <u>Medicare Benefit Policy Manual</u> ("Manual") which interprets the Medicare regulations. Several portions of the Manual are instructive in the instant matter.  First, section 10.3 of the Manual, entitled "The Destination," states as follows:

> Medicare covers ambulance transports only to the following destinations:
>
> • Hospital;
>
> . . .
>
> As a general rule, only **local** transportation by ambulance is covered, and therefore, only mileage to

the nearest appropriate facility equipped to treat the
patient is covered.

Medicare Benefit Policy Manual, 100-02, Chapter 10, Section 10.3.

Further, the Manual states:

> Occasionally, the institution to which the patient is
> initially taken is found to have inadequate or
> unavailable facilities to provide the required care,
> and the patient is then transported to a second
> institution having appropriate facilities.

Medicare Benefit Policy Manual, 100-02, Chapter 10, Section

10.3.2.  The Manual goes on to define "appropriate facilities"

as follows:

> the institution is generally equipped to provide the
> needed hospital or skilled nursing care for the illness
> or injury involved.  In the case of a hospital, it also
> means that a physician or a physician specialist is
> available to provide the necessary care required to
> treat the patient's condition.
>                     . . .
>
> The fact that a more distant institution is better
> equipped, either qualitatively or quantitatively, to
> care for the patient does not warrant a finding that a
> closer institution does not have "appropriate
> facilities."  Such a finding is warranted, however, if
> the beneficiary's condition requires a higher level of
> trauma care or other specialized service available only
> at the more distant hospital.

Medicare Benefit Policy Manual, 100-02, Chapter 10, Section

10.3.6.  In addition, Section 10.4 of the Manual deals with air

ambulance services.  It states, in pertinent part:

> Medically appropriate air ambulance transportation is a
> covered service regardless of the State or region in
> which it is rendered.

Medicare Benefit Policy Manual, 100-02, Chapter 10, Section 10.4.

10

Section 10.4.4 of the Manual addresses hospital to hospital transports, and states:

> Air ambulance transport is covered for transfer of a patient from one hospital to another if the medical appropriateness criteria are met, that is, transportation by ground ambulance would endanger the beneficiary's health and the transferring hospital does not have adequate facilities to provide the medical services needed by the patient.
>
> . . .
>
> A patient transported from one hospital to another hospital is covered only if the hospital to which the patient is transferred is the nearest one with appropriate facilities.  Coverage is not available for transport from a hospital capable of treating the patient because the patients and/or the patient's family prefer a specific hospital or physician.

Medicare Benefit Policy Manual, 100-02, Chapter 10, Section 10.4.4.

## IV.  ALJ DECISION AND THE MOTIONS FOR SUMMARY JUDGMENT OF PLAINTIFF AND DEFENDANT

Plaintiff argues that Lankenau Hospital in Pennsylvania was the closest appropriate facility to Arizona that was capable of treating Mr. Beckett due to his rare neurological condition. (Pl. Cr. Mot. at 1).  The ALJ, however, found that Lankenau Hospital was not the closest, appropriate facility capable of treating Mr. Beckett's medical conditions.  (R. 169).

Defendant filed a Motion for Summary Judgment in which he argues that Mr. Beckett was not entitled to Medicare Part B benefits for the cost of his air ambulance transportation because

the hospital to which he was flown was not the nearest appropriate hospital as required by Medicare regulations.[1] (Def. Bf. at 5-15). Plaintiff filed a Cross-Motion for Summary Judgment in this matter, where she presents the following arguments: 1) the ALJ erred in finding that adequate notice of non coverage was provided to the beneficiary; and 2) the ALJ erred in basing his decision that the air ambulance transport in question was not medically necessary because there were nearer hospitals with appropriate facilities upon the testimony of Larry Levy, M.D., CEO of Med Flight. (Pl. Cr. Mot. at 10-29). The issue before this Court, however, is whether the Secretary's final decision that Plaintiff is liable for charges for Mr. Beckett's air ambulance transfer to Lankenau should be sustained as being supported by substantial evidence.

Based on this Court's independent and thorough review of the record and for the reasons that follow, we find that the ALJ's decision fails to address a certain fundamental piece of evidence. Thus, the ALJ's decision cannot be said to be supported by substantial evidence. We will, therefore, recommend that Plaintiff's Cross-Motion for Summary Judgment be granted in part and this matter be remanded for further proceedings. We will also recommend that Defendant's Motion for Summary Judgment

---

[1]   Defendant also filed a Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment, and Plaintiff filed a Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment.

be denied.

**V.   <u>DISCUSSION</u>**

Plaintiff alleges several errors made by the ALJ in deciding this matter.  After a thorough review of the entire record, we find that the ALJ failed to discuss the opinion contained in the August 8, 2005, letter of Dr. Peter Economou, Plaintiff's treating pulmonary doctor at Lovelace.[2]  We also find that the ALJ failed to discuss whether an Advanced Beneficiary Notice ("ABN") should have been provided to Plaintiff prior to the transfer.  Therefore, although the ALJ's determination may indeed be supported by substantial evidence, the fact that the ALJ apparently failed to consider relevant evidence causes us to remand, as does the failure to analyze the need for an ABN.

**A.   <u>Dr. Economou's August 8, 2005, Letter</u>**

In the present case, one of Plaintiff's treating physicians at Lovelace, Dr. Economou, submitted evidence regarding the necessity of the air ambulance transfer, which the ALJ failed to address.  Thus, the ALJ provided an insufficient basis for a reviewing court to conduct meaningful judicial review.  It is undisputed that Dr. Economou authored a report in which he apparently stated Mr. Beckett's transport to Lankenau Hospital was medically necessary.  However, that report is not contained

---

[2]     We have also determined this August 8, 2005, letter of Dr. Economou is not contained in the administrative record before this Court.

in the administrative record and is not discussed by the ALJ in his decision.  We find this to be an error which justifies a remand in this matter.

In reaching a decision, the ALJ must consider all of the relevant evidence in the record.  Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984); Cotter v. Harris, 642 F. 2d 700, 705 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979); Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978).  Furthermore, to guard against an abuse of discretion by the Secretary, the ALJ is required to provide some indication of the evidence which was rejected in arriving at the decision and the reasons therefore, so that a reviewing court can determine whether probative evidence was properly credited or simply ignored.  See Cotter, at 705.

We conclude that by ignoring Dr. Economou's opinion regarding the necessity of the air ambulance transport, the ALJ acted in clear dereliction of his duty to explicitly weigh all evidence.  See Dobrowolsky, 606 F.2d at 407, see also Sykes v. Apfel, 228 F.3d 259, 266 (3d Cir. 2000).  Without discussing the opinions of Dr. Economou regarding the necessity of Mr. Beckett's air ambulance transport to Lankenau, the ALJ concluded that there were closer hospitals that were capable of treating Mr. Beckett. (R. 16).  The ALJ made this determination by relying heavily on the testimony of Larry Levy, M.D., CEO of Med Flight.  (R. 15).

14

Dr. Levy testified that Mr. Beckett could have been treated appropriately at Lovelace without the need for a transfer.  (R. 15).  This testimony of Dr. Levy is in direction contradiction to the opinions of Mr. Beckett's treating neurologist, Dr. DeSouza, and Dr. Economou, the treating pulmonary doctor.  The ALJ discussed Dr. DeSouza's opinions in great detail and discredited them, but completely failed to discuss Dr. Economou's opinion that the transfer was medically necessary.  By failing to discuss Dr. Economou's opinion, the ALJ provides this Court with no evidence of whether he evaluated and discredited Dr. Economou's opinion entirely, or just failed to evaluate it.

This Court "cannot conduct de novo review of the Commissioner's decision or re-weigh the evidence of record." Schwartz v. Halter, 134 F.Supp. 2d 640, 647 (E.D.Pa. 2001)(citing Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D.Pa. 1998)).  Thus, where the ALJ has failed to adequately explain in the record his reasons for rejecting or discrediting competent evidence, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  Schwartz, 134 F.Supp. at 648 (citing Cotter, 642 F.Supp. at 705).  The Third Circuit has directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," Dobrowolsky, 606 F.2d at 407, see also Sykes, 228 F.3d at 266, and explain a rejection of the evidence.  See Schaudeck, 181 F.3d at 435

15

(<u>citing</u> <u>Benton v. Bowen</u>, 820 F.2d 85, 88 (3d Cir. 1987)).

> Unless the Secretary has analyzed all evidence and has
> sufficiently explained the weight he has given to
> obviously probative exhibits, to say that his decision
> is supported by substantial evidence approaches an
> abdication of the court's 'duty to scrutinize the
> record as a whole to determine whether the conclusions
> reached are rational.'

<u>Id</u>.  That is, meaningful judicial review of the ALJ's decision is

not possible where the ALJ has not sufficiently explained the

weight given to all probative evidence, which necessarily

includes the assessment of one of Mr. Beckett's treating

physicians regarding the appropriateness of the transfer in

question.

     This Court may not presume to know why the ALJ failed to

address the opinion of Dr. Economou regarding the necessity of

Mr. Beckett's transfer to Lankenau; judicial review is not

meaningful when based on such presumptions.  <u>Woodcock v.</u>

<u>Barnhart</u>, 2003 WL 1949638, at *6 (E.D. Pa. Apr 24, 2003).

Without the ability to meaningfully review the ALJ's conclusion

as to Dr. Economou's opinions regarding the necessity of this

transport, we are compelled to recommend that the case be

remanded so that the ALJ can provide the tools to engage in such

review.  Remanding the case for this reason does not reflect

anything more than the court's need for such information in

reviewing the ALJ's decision.[3]

Further, we note that the August 8, 2005, report of Dr. Economou cannot be located in the administrative record.  This report clearly exists, as it was discussed both at the hearing before ALJ Amos and in Plaintiff's pleadings in this case.[4]  (R. 505; Pl. Cr. Mot. at 28).  Plaintiff's Cross-Motion for Summary Judgment cites to the August 8, 2005, letter of Dr. Economou, and states that it is located in the administrative record at page 37.  (Pl. Cr. Mot. at 28).  However, a review of the administrative record shows that page 37 is missing.  A thorough

---

[3]     "The court can hypothesize numerous sound reasons that might have informed the ALJ's conclusion on this issue, however our court of appeals does not permit such guesswork in the name of judicial review."  Woodcock v. Barnhart, 2003 WL 1949638, at *6 (E.D.Pa. Apr. 24, 2003).

[4]     At the August 22, 2006, hearing in this matter, the following exchange occurred on the record between Cary Flitter, Esq., counsel for Plaintiff, and Dr. Levy:

> Mr. Flitter:        And I'll read you this letter, Dr. Levy, and you tell me if you have seen it before, or if you're acquainted with the contents.
>
>                     August 8, 2005, Judge, to Anita Beckett, To whom it may concern, quote, Samuel Beckett was hospitalized at Lovelace Medical Center, from March 8, 2005 to March 11, 2005, and was in severe critical condition.  The patient was transported to Lankenau Hospital in Philadelphia, Pennslyvania, for continuing care.  In my opinion, I feel this transfer was medically necessary and in the best interest of the patient, closed quote.
>
>                     Have you seen that letter before, Dr. Levy?
>
> Dr. Levy:           No, I have not.

(R. 505).  Based upon this exchange, it is clear that this letter from Dr. Economou exists.  However, this court cannot rely on secondhand testimony as to the contents of this letter in order to determine whether the ALJ's opinion in this matter was supported by substantial evidence.

17

review of the entire voluminous record shows that Dr. Economou's letter is found nowhere in the administrative record.

Based on the record before us, we cannot determine whether the ALJ's decision is supported by substantial evidence.  Because Dr. Economou's opinion would likely impact an area of the ALJ's decision which Plaintiff now challenges, the effect of this medical evidence should be re-examined by the Secretary on remand.  Further, because the ALJ's decision fails to demonstrate consideration of all relevant evidence, namely Dr. Economou's opinion as to the necessity of Plaintiff's air ambulance transport, the matter should be remanded for further consideration and articulation as to the weight applied to the opinions of all doctors, including Drs. Levy and DeSouza.

In light of this re-evaluation of the evidence, the ALJ should also reconsider his determination as to whether Lankenau Hospital was the nearest appropriate facility to treat Mr. Beckett.  In so doing, the ALJ should explicitly discuss, in light of all of the available record evidence, how he made his determination regarding nearest appropriate facility.  If the ALJ should ultimately determine that Plaintiff should not be reimbursed for the air ambulance transport in question, the ALJ must articulate the weight applied to the evidence and the

reasons for rejecting Plaintiff's claim for reimbursement.[5]

**B.    Advanced Beneficiary Notice**

Plaintiff also argues that she should have been provided with an Advanced Beneficiary Notice ("ABN") by Med Flight prior to Mr. Beckett's flight from Arizona to Pennsylvania, informing her that Medicare might not pay for the transport.  (Pl. Cr. Mot. at 10-18).  An ABN is a form signed by the beneficiary recognizing that Medicare will most likely deny coverage for the services about to be provided.  If a Medicare beneficiary did not know that a service might not be covered by Medicare prior to the administration of said service, the beneficiary cannot be liable to the provider for the cost of that service.  42 U.S.C. § 1395pp(b).  The Medicare regulations provide that an ABN must (i) be in writing, using approved notice language; (ii) cite the particular service or services for which payment is likely to be denied; and (iii) cite the physician's reason for believing Medicare payment will be denied.  42 C.F.R. § 411.408(f)(1).  Further, if an ABN was necessary and not provided by a provider, a beneficiary will be shielded from liability if the beneficiary had no reason to know that the services were not covered by Medicare.  42 U.S.C. § 1395pp(a).

In the instant matter, Plaintiff argues that she was not

---

[5]    The Third Circuit requires the ALJ to set forth the reasons for his decision.  Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000)(citing Cotter, 642 F.2d at 704-05).

provided with (nor did she sign) an ABN which gave her any indication that the air ambulance transport might not be covered. (Pl. Cr. Mot. at 10-18).  Defendant counters by arguing that the ABN is inapplicable in the instant situation, because the Medicare regulations do not allow an ABN to be given to a beneficiary "in a medical emergency or otherwise under great duress (i.e., when circumstances are compelling and coercive) since that individual cannot be expected to make a reasoned informed consumer decision."  (Def. Memo in Opp. to Pl. Cr. Mot. at 10-14).

In the instant matter, it appears that no ABN was given to Plaintiff.  Certainly, there is no ABN contained in the administrative record, and the ALJ did not address whether Med Flight should have provided Plaintiff with an ABN.  We believe that the ALJ in this matter should have determined whether an ABN was necessary, and if so, determined whether or not one was indeed given to Plaintiff.  The ALJ failed to make this determination regarding the necessity of an ABN.  Thus, we would also remand this matter for the ALJ to determine whether Plaintiff should have been provided with an ABN.  If the ALJ determines that an ABN was necessary in the instant matter, he should next determine whether one was given to Plaintiff, and if not, what the appropriate remedy would be for said failure.

## VI.   **CONCLUSION**

Because the ALJ's decision fails to demonstrate consideration of all relevant evidence, the matter should be remanded for further consideration and articulation as to the weight applied to the evidence.  If the ALJ should determine that Plaintiff does not qualify to be reimbursed for the cost of Mr. Beckett's air ambulance transfer to Pennsylvania, the ALJ must articulate the weight applied to the evidence and the reasons for rejecting Plaintiff's claim.  However, Plaintiff should remain cognizant that the ultimate burden of proving entitlement to Medicare coverage for Mr. Beckett's air ambulance transport rests with her.[6]  Therefore, I make the following:

---

[6]     <u>Keefe v. Shalala</u>, 71 F.3d 1060., 1062 (2d Cir. 1995).

## **RECOMMENDATION**

AND NOW, this 14th day of April, 2008, it is RESPECTFULLY RECOMMENDED that the Plaintiff's Cross-Motion for Summary Judgment should be GRANTED in part and this matter should be remanded for further proceedings.  It is also RECOMMENDED that Defendant's Motion for Summary Judgment should be DENIED.

BY THE COURT:

/s/ Arnold C. Rapoport

ARNOLD C. RAPOPORT,
United States Magistrate Judge